UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| DEBORAH L. WELLS, | ) |
| | ) |
|     Plaintiff, | ) Action No. 5:14-CV-391-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security | ) |
| | ) |
|     Defendant. | ) |

** ** ** ** **

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 9, 10) on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits.[1]  The matter having been fully briefed by the parties is now ripe for this Court's review.

## I.   Overview of the Process and the Instant Matter

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1]     These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

**II.**

In August 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning March 19, 2010 (Tr. 185-95). An Administrative Law Judge ("ALJ") issued an unfavorable decision on October 30, 2013 (Tr. 16-31). After Plaintiff asked the Appeals Council to review the ALJ's decision, the Appeals Council declined Plaintiff's request for review (Tr. 1-7) on September 29, 2014, making the ALJ's October 2013 decision the

final agency decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481, 422.210(a). This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g).

### III.

Plaintiff was 47 years old at the time she allegedly became disabled on March 19, 2010, but was "closely approaching advanced age" (20 C.F.R. 404.1563 and 416.963) at the time of the ALJ's decision in 2013. Plaintiff has at least a high school education and has past relevant work as a call center representative, loan clerk, and assistant manager. She claims disability due to "nerves," high blood pressure, and a blood clot in her leg (Tr. 241).

Plaintiff was last gainfully employed at a call center until 2008, at which time she left work to care for her elderly parents. (Tr. 209, 241, 270). Caring for her parents involves assisting her mother as she goes to the bathroom and travels through the house; cooking simple meals; washing clothes; and doing dishes (Tr. 46-7). She testified that she drives once a week and does grocery shopping for the family, which takes less than two hours (Tr. 47-48).

She alleges that her disability began in 2010. While she sought medical care in 2010 and 2011, she went to her primary care physician, Dr. Agomaa, "for the first time with nervousness" in March 2012 (Tr. 284). She reported occasional insomnia, sadness,

3

and exhaustion from caring for her parents by herself (*Id*.). Dr. Agomaa diagnosed her with anxiety disorder and prescribed an antidepressant (Tr. 285). When she returned later in May, she told Dr. Agomaa that her antidepressant was not yet helping her (Tr. 276). During that visit, Dr. Agomaa noted that Plaintiff had diminished sensation in her left leg to light touch and diagnosed her with idiopathic peripheral autonomic neuropathy, related to a past trauma (Tr. 277). When Dr. Payne reviewed the medical evidence for Disability Determination Services, he disagreed with Dr. Agomaa's diagnosis of neuropathy, noting that the examination was essentially normal and that Dr. Agomaa had not ordered testing at that point (Tr. 287).

An evaluating psychologist, Dr. Skaggs, examined Plaintiff in June 2012 in connection with her application for disability benefits (Tr. 269). Plaintiff told Dr. Skaggs that she cried frequently and had panic attacks at night, among other symptoms. Dr. Skaggs observed that she was dressed and groomed appropriately, performed well on tests of concentration and memory, and spoke normally and had logical thought processes, but she concluded that Plaintiff would have marked difficulty with handling the stress and pressures of day to day employment (Tr. 269-72.) She also observed that she would have moderate difficulty with understanding, remembering, and carrying out instructions with respect to simple, repetitive tasks; moderate difficulty with

4

sustaining attention and concentration toward performance of simple, repetitive tasks; and moderate difficulty with responding appropriately to supervisors and coworkers in a work setting (Tr. 272-73).

A reviewing, consulting agency psychologist, Dr. H. Thompson Proutt, recommended giving great weight to the opinion of Dr. Skaggs when he assessed Plaintiff's records on June 29, 2012, assigning her moderate limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace.  He also assessed moderate limitations with the general public, moderate limitations in the ability to respond appropriately to changes in the work setting (Tr. 71-74).  In his report, dated August 21, 2012, Dr. Eric Wiener also recommended giving great weight to the opinion of Dr. Skaggs, although he concluded that Plaintiff's complaints of symptoms was only partially credible because they seemed disproportionate in to the objective evidence in the record (Tr. 94-95).

Another psychologist, Dr. Angela Register, reviewed the evidence of record at the request of Disability Determination Services and prepared a report, dated November 26, 2012 (Tr. 288-89).  She opined that Dr. Skagg's opinions were only partially persuasive because Dr. Skagg's assessment of marked limitations was inconsistent with Plaintiff's performance during the

5

examination with Dr. Skaggs and her ability to act as a full-time caregiver for her aging parents (Tr. 289).

Plaintiff returned to Dr. Agomaa in August 2012, where she complained of pain and a cold feeling in her left leg which she attributed to a fracture suffered in 2005 (Tr. 275). When Dr. Agomaa prepared a Medical Statement of Family Medical Specialty on August 7, 2013, he reported that she could work 2 hours a day, walk or stand 2 hours a day, sit for 4 hours a day, occasionally lift 10 pounds and frequently lift 5 pounds, constantly use her right and left hands, and occasionally bend, stoop, balance, and climb ladders or stairs (Tr. 320). He also opined that she would be absent from work due to her medical condition three days every month (*Id*.) She returned in February 2014 and advised Dr. Agomaa that the medications prescribed to treat her neuropathic pain were not helping (Tr. 324). Objective testing, including x-ray of her legs and ankles, duplex arterial imaging of both lower extremities, and an x-ray of her lumbar spine, provided no information concerning the source of her pain (Tr. 324, 327-31).

In determining that Plaintiff was not disabled, the ALJ applied the agency's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520. He concluded that Plaintiff had severe impairments due to idiopathic peripheral neuropathy, status post-trauma; panic disorder without agoraphobia; and major depressive disorder. He concluded that she had a residual functional capacity

6

to perform light work that involved only simple tasks for two-hour periods, occasional interaction with coworkers and supervisors, and no interaction with the general public (Tr. 24). In evaluating her complaints of chronic pain, the ALJ accepted Dr. Agomaa's diagnosis of neuropathy and found "that her peripheral neuropathy limits her to light exertional level work" and that "[n]o additional limitations are needed to accommodate this impairment" (Tr. 25).[2] He gave great weight to her treating physician's opinions except with respect to the medical source statement because, he concluded, "there is nothing in that provider's treatment notes to support the proposed limitations" with respect to her ability to do work and "no evidence to indicate that the claimant's physical impairment limits her to less than sedentary work activity" (Tr. 25). He considered that her daily activities that she reported in caring for her mother exceeded the level of impairment represented in the medical source statement (Tr. 25).

---

[2] According to 20 C.F.R. § 404.1567,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7

After assessing Plaintiff with the residual functional capacity to do light work with certain conditions ("She is able to understand, remember, and carry out simple tasks for two-hour periods. She is able to interact occasionally with coworkers and supervisors, but is unable to interact with the general public. She is able to adapt to routine work changes"), the ALJ solicited an opinion from a vocational expert, who testified that there were jobs in the regional and national economy which would be available at that level of work and with those limitations, including small products assembly, hand packing, and grading and sorting (Tr. 25-6, 52-55). Ultimately, he concluded that she was not disabled (Tr. 27.)

**IV.**

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Foster*, 279 F.3d at 353.

**V.**

Plaintiff's appeal focuses on her exertional limitations arising from her physical conditions and how they limit her ability to work.  She complains that the ALJ erred when he failed to adopt Dr. Agomaa's opinion that she could do less than sedentary from his medical source statement in the absence of any other evidence of applicable restrictions from another medical source and because the ALJ gave less weight to Dr. Agomaa's opinion without identifying the medical opinion to which he was giving greater weight.  She argues, as well, that the ALJ failed to provide an appropriate RFC with respect to limitations arising from her peripheral neuropathy and should have included restrictions for pushing and pulling and operating foot controls.

She has provided no citation to any evidence of record which supports Dr. Agomaa's opinion with respect to severe restrictions.  Nor does she cite any evidence to suggest that she is restricted in operating foot controls by her neuropathy.  Plaintiff does not directly address the ALJ's stated reasons for discounting Dr. Agomaa's opinions, except to state that they must be incorrect, which is not enough.  In fact, the ALJ took a close look at the records concerning her diagnosis, noting that the state agency physician had even questioned Dr. Agomaa's diagnosis of idiopathic neuropathy which was based solely on an examination finding of diminished sensation to light touch [AR 25.]  The ALJ gave her the benefit of the doubt, however, and included it as an impairment

9

then accounted for the condition, writing "I will accept the diagnosis of her treating physicians and find that her peripheral neuropathy limits her to light exertional level work. No additional limitations are needed to accommodate this impairment." (AR 3.]

The ALJ was not required to draw the specific limitations in the RFC from the treating physician's opinion with respect to her ability to do work. Rather, the responsibility for determining the residual functional capacity is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quotation omitted). The ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). As a general matter, a treating physician's opinion may be entitled to controlling weight when it is "well-supported by clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). However, even a treating physician's opinion may be given less weight when it is not supported by the evidence. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530 (6th Cir. 1997).

10

When giving an opinion less than controlling weight, the ALJ should consider several factors and give "good reasons" for the weight given to any opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ did so here, finding that Dr. Agomaa's opinion with respect to Plaintiff's ability to do work deserved little weight, (Tr. 25 ("lesser weight was given to the medical source statement at Exhibit 8F")), because it was inconsistent with and unsupported by Dr. Agomaa's own treatment notes (Tr. 25) as well as other evidence of record. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (quotation omitted). The present case is simply not of the same variety as that *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 592 (S.D. Ohio 2013) (holding that ALJ erred and her RFC determination lacked any support in the record where she impermissibly relied on her own interpretation of medical data of record, ignored countless reports regarding severity of Plaintiff's impairments as well as limitations caused by those impairments, and improperly substituted her interpretation in place of opinions of treating and state agency physicians), upon which Plaintiff urges the Court to rely.

Even so, the Court easily finds support in the record for the decision of the Commissioner. Dr. Agomaa did not observe other significant mental or physical limitations as recorded in his notes

11

when he saw Plaintiff. For instance, he did not note any limitations in walking, her ability to lift, or any significant limitations with memory or concentration (e.g., Tr. 277). Further, the ALJ observed that Plaintiff's self-reported ability to act as a care-giver for her elderly parents was inconsistent with Dr. Agomaa's suggestion that she was capable of less than sedentary work activity. [AR 25, 223]. In other words, there is evidence of record from which a reasonable person could conclude that the ALJ had good reason for discounting Dr. Agomaa's assessment of Plaintiff's ability to do work and that, in fact, far from the ALJ "play[ing]" doctor as Plaintiff contends, the ALJ gave her the benefit of the doubt with respect to her exertional limitations in formulating an RFC which limited her to light work – notwithstanding Dr. Agomaa's opinion that she could do less – in the absence of some clearer indication of her anticipated limitations or the basis for those limitations in her treatment records.

For all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 9) is **DENIED** and

2) that Defendant's Motion for Summary Judgment (DE 10) is **GRANTED.**

12

This the 29th day of February, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge